**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ANGELA COPELAND,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-cv-00672-O** |
| | § | |
| **G6 HOSPITALITY LLC,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**OPINION AND ORDER**

Before the Court are Defendant G6 Hospitality LLC's Motion for Summary Judgment, Brief, and Appendix in Support (ECF No. 39–39-5); Plaintiff Angela Copeland's Response (ECF No. 40); and Defendant G6 Hospitality LLC's Reply (ECF No. 41). Having considered the Motion, briefing, and applicable law, the Court **GRANTS** Defendant G6 Hospitality LLC's Motion for Summary Judgment (ECF No. 39). All other motions are **DENIED** as moot (ECF Nos. 38, 46, 52, 53).

## I. BACKGROUND[1]

G6 Hospitality LLC ("Defendant") offered Angela Copeland ("Plaintiff") employment on December 29, 2022. The offer letter included a severance plan that stated: "In the event of a position elimination due to Change of Control, you will be eligible for severance based on completed years of service per the Company Severance Plan (0-2 years = 12 weeks; 2-5 years = 25 weeks; 5+ years = 52 weeks)."[2] Plaintiff accepted Defendant's offer and began her employment

[1] All facts have been taken from the summary judgment briefing unless otherwise noted.
[2] Pl.'s Comp. ¶7, ECF No. 1.

on January 23, 2023. Plaintiff continued working for Defendant until her termination on December 19, 2024.

On or about December 17, 2024, OYO USA ("OYO"), completed its purchase of Defendant. On December 19, 2024, Defendant informed Plaintiff of the elimination of her position and terminated Plaintiff on the same day. As of the date of Plaintiff's termination, she worked for Defendant for twenty-three months and twenty-seven days, fewer than two full years. Defendant provided Plaintiff with twelve weeks of severance pay.

On March 20, 2025, Plaintiff filed suit against Defendant in this Court. Plaintiff alleged violations of the Worker Adjustment and Retraining Notification Act ("WARN") and breach of contract. Defendant filed its Motion for Summary Judgment on all counts on May 27, 2026. The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

The Court should grant summary judgment when the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner

in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there is no support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing particular parts of materials in the record. Fed. R. Civ. P. 56 (c)(1)(A). A party may object to material cited if the disputed fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56 (c)(2). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial". *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), as revised (July 5, 2017). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.*

## III. ANALYSIS

### A. Evidentiary Objections

Before addressing the merits of the summary judgment, the Court must address Plaintiff's evidentiary objections. The analysis of this case depends on whether Plaintiff can show a dispute of material fact over Defendant terminating more than 33% of its workforce during a 90-day period. Defendant cites the Ramamurthi Declaration (Exhibit A) and the terminated employee

records (Exhibit B) to demonstrate it never violated WARN.[3] Plaintiff objects to Defendant's evidence claiming Defendant's Exhibit A is inadmissible hearsay, not best evidence, and contains inadmissible expert testimony.[4] Plaintiff also objects to Exhibit B as lacking proper authentication.[5] Plaintiff further objects that paragraphs 11–16 of Defendant's contradict Defendant's earlier interrogatory answer.[6] The Court agrees with Defendant, the evidence is admissible.

1. Objections to Exhibit A

Plaintiff objects to Paragraphs 3, 4, 5, 6, 8, and 9, of Exhibit A as inadmissible hearsay and violation of best evidence.[7] The Court disagrees that the affidavit is inadmissible hearsay. Federal Rule of Civil Procedure 56(c)(4) allows affidavits or declarations to be used in support of summary judgment motion when "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56 (c)(4). Hearsay is an out-of-court statement offered for the truth of the matter asserted by the statement. FED. R. EVID. 801(c). Hearsay within an affidavit would be an example of inadmissible evidence. FED. R. EVID. 802. Courts have excluded portions of affidavits when the affidavit clearly contains out of court statements from a party not signing the affidavit. *Cross Trailers, Inc. v. Cross Trailer Mfg. & Sales, LLC*, 363 F. Supp. 3d 774, 785–786 (W.D. Tex. 2018). Plaintiff offers no reasoning for why the paragraphs constitute hearsay other than the bare objection. None of the statements are obvious hearsay. Instead, all statements appear to be made based on the affiant's personal knowledge.[8]

---

[3] Def.'s Br. Mot. Summ. J. 7–8, ECF No. 39-1.
[4] Pl.'s Resp. 8–9, ECF No. 40.
[5] *Id.* at 9–12.
[6] *Id.* at 10–12.
[7] *Id.* at 8.
[8] Def.'s Mot. Summ. J. Ex. A (Declaration of Dinesh Ramamurthi), App. 001–002, ECF No. 39-3.

Nor does Plaintiff provide reasons for why the paragraphs violate the best evidence rule which requires "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. Plaintiff does not assert the affidavit is an unoriginal writing, and Defendant produced the information upon which the affidavit was based in Exhibit B.

Plaintiff further objects to paragraphs 7 and 10 of Exhibit A as inadmissible expert opinions.[9] "Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the courts." *Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.*, No. 4:22-CV-00093, 2023 WL 12098402 at *5 (E.D. Tex. July 5, 2023). Both paragraphs 7 and 10 contain legal conclusions. Therefore, the Court excludes the legal conclusions about the application of 29 U.S.C. § 2101(a)(8) but agrees with Defendant that the exclusion of legal opinions does not exclude the underlying arithmetic which can support a legal conclusion.[10] The Court will consider Exhibit A as summary judgment evidence but will not rely on Defendant's legal conclusions in Paragraphs 7 and 10.

2. Objections to Exhibit B

Plaintiff objects to Exhibit B as lacking foundation because the exhibit "has not been authenticated and it is not referenced or explained in Defendant's declaration in Exhibit A."[11] Testimony that an item is what it claims to be by a witness with knowledge suffices to satisfy the Rule 901 authentication requirement. FED. R. EVID. 901. Dinesh Ramamurthi, an HR executive for Defendant, testified that he reviewed the Human Resource Information System ("HRIS") records which he routinely reviews in the course of his duties.[12] Plaintiff argues that Exhibit A never refers

[9] Pl.'s Resp. 8, ECF No. 40.
[10] Def.'s Reply 16–17, ECF No. 41.
[11] Pl.'s Resp. 9, ECF No. 40.
[12] Def.'s Mot. Summ. J. Ex. A (Declaration of Dinesh Ramamurthi), App. 001–002, ECF No. 39-3.

to or explains Exhibit B.[13] But, Paragraph 4 of Exhibit A specifically states that he "reviewed the Company's termination records for the period December 17, 2024 through March 16, 2025."[14] The title of Exhibit B in Defendant's appendix is "Terminated Employee Records (HRIS Data, Dec. 2024 – Mar. 2025)."[15] Exhibit B claims to be the "Terminated Employee Records (HRIS Data, Dec. 2024 – Mar. 2025)" which Dinesh Ramamthuri examined to make his conclusions. To the extent Plaintiff makes a form objection because Dinesh Ramamthuri did not specifically authenticate Exhibit B as true and correct copies of the employment records, this Court may still consider Exhibit B for summary judgment purposes if Defendant can explain the admissible form that is anticipated at trial. FED. R. CIV. P. 56 (c)(2); *Lee,* 859 F.3d at 355. Defendant argues Exhibit A provides testimony stating: "Ramamurthi, as G6's Chief Human Resources Officer, testifies from personal knowledge that Exhibit B consists of true and correct copies of G6's HRIS-generated Terminated Employee Records, maintained in the regular course of G6's business"[16] and that at trial Ramamurthi can provide live testimony to the same evidence.[17] The Court finds Defendant's explanation that Exhibit B can be produced in an admissible form at trial, with Ramamurthi's testimony providing the necessary foundation, satisfactory. Therefore, the Court will consider Exhibit B as summary judgment evidence.

### B. WARN Act Claim

Plaintiff alleges Defendant violated the WARN act by firing her without proper notice.[18] The WARN act prevents employers from ordering a mass layoff or plant closing until 60 days after having served employees a written notice. 29 U.S.C. § 2102. Plaintiff did not plead any

---

[13] Pl.'s Resp. 9, ECF No. 40.
[14] *Id.*
[15] Def.'s Mot. Summ. J. Ex. A (Declaration of Dinesh Ramamurthi), App. 001, ECF No. 39-2.
[16] Def.'s Reply 16, ECF No. 41.
[17] *Id.*
[18] Pl.'s Comp. ¶¶ 19–24, ECF No. 1.

facts indicating a plant closing; therefore, Plaintiff can proceed only on the mass layoff theory.[19] A "mass layoff" means a reduction in force which:

> **(A)** is not the result of a plant closing; and
>
> **(B)** results in an employment loss at the single site of employment during any 30-day period for--
>
> > **(i)(I)** at least 33 percent of the employees (excluding any part-time employees); and
> >
> > **(II)** at least 50 employees (excluding any part-time employees); or
> >
> > **(ii)** at least 500 employees (excluding any part-time employees); 29 U.S.C § 2101(3).

Employment loss does not include voluntary departures. 29 U.S.C § 2101(6). Additionally, Part-time employees are employees who average fewer than 20 hours a week or who have been employed fewer than 6 of the 12 months preceding the date when notice was required. 29 U.S.C § 2101(8). An employer who fails to provide the 60-day notice is liable for "back pay for each day of violation." 29 U.S.C. § 2104(a)(1)(A). A voluntary departure does not qualify as an employment loss. 20 C.F.R. § 639.3(f)(1). 29 U.S.C. § 2102(d) extends the relevant time period from 30 days to 90 days when 2 or more groups at a single site of employment are a part of the losses.

The Court has two time periods to analyze. Any 30-day period in which the employment loss exceeded 33 percent, and any 90-day period in which the employment loss exceeded 33 percent. Defendant argues Plaintiff cannot show any 30-day or 90-day period in which the employment losses exceed 33 percent.[20] Plaintiff argues that the Court should count all employees Defendant planned to lay off when it first took over the company as part of the loss.[21]

---

[19] *See generally* Pl.'s Comp. ¶¶ 19–24, ECF No. 1; Def.'s Br. Mot. Summ. J. 9, ECF No. 39-1.
[20] Def.'s Br. Mot. Summ. J. 10–13, ECF No. 39-1.
[21] Pl.'s Resp. 9, ECF No. 40.

Defendant has met the initial summary judgment burden by providing numbers which clearly show that at no point in any 30-day or 90-day window did employment losses exceed 33 percent.

> "As of December 17, 2024, G6's WARN-eligible workforce at its Carrollton headquarters was 222 full-time employees. (App. 1 [Ramamurthi Decl. ¶ 3]; UF ¶ 10.)
>
> During December 17, 2024 – March 16, 2025, 81 total separations occurred. Of those, 14 are excluded by statute: 8 short-tenured, 1 part-time, and 5 voluntary resignations. (App. 2–3 [Ramamurthi Decl. ¶¶ 4–6]; App. 4–7 [Terminated Employee Records]; UF ¶¶ 11 13.)
>
> After applying mandatory exclusions, only 67 WARN-eligible employment losses remain. (App. 2–3 [Ramamurthi Decl. ¶ 6]; UF ¶ 13.)
>
> 67 ÷ 222 = 30.18%. The 33-percent threshold requires at least 74 losses (33% × 222 = 73.26). The record is 7 employees short. (App. 3 [Ramamurthi Decl. ¶¶ 8–9]; UF ¶¶ 15 16.)"[22]

Furthermore, Defendant has shown that no aggregation of the 90-day window reaches 33 percent.[23]

> "December 2024: 28 WARN-eligible losses (12.61% of 222). (App. 3 [Ramamurthi Decl. ¶ 7].)
>
> January 2025: 30 WARN-eligible losses (15.71% of 191 remaining). (App. 3 [Ramamurthi Decl. ¶ 7].)
>
> February 2025: 9 WARN-eligible losses (5.66% of 159 remaining). (App. 3 [Ramamurthi Decl. ¶ 7].)
>
> Most expansive 90-day window (Dec. 2024 – Feb. 2025): 67 losses = 30.18%. (App. 3 [Ramamurthi Decl. ¶ 8].)"[24]

[22] Def.'s Br. Mot. Summ. J. 10–11, ECF No. 39-1.
[23] *Id.* at 12.
[24] *Id.*

Since Defendant meets its burden, the burden now shifts to Plaintiff to demonstrate a dispute of material fact. Plaintiff fails to provide evidence of Defendant ever conducting a mass layoff under the definition of the statute.[25] Plaintiff argues Defendant manipulated the layoffs by "terminating 58 of its 222 employees (26.13%) on December 17 and 19, 2024, then terminate only 9 employees in February (30.18%)," and waiting "until March 31, 2025, to officially terminate 23 employees (40.54%)."[26] These numbers admit Defendant never exceeded the 33% mark in a 90 day period. Plaintiff asks this Court to extend the statutory time Congress set by an additional 14 days.[27] Because this Court does not have authority to rewrite the statute, Plaintiff's argument fails.

Plaintiff's argument that the Court should apply a prospective analysis falls short. Plaintiff cites to *United Mine Workers of Am. v. Martinka Coal Co.*, to suggest this Court should view the layoffs from when the company initially planned to lay off employees. 202 F.3d 717 (4th Cir. 2000). The current situation is distinguishable. In *Martinka*, on October 2, 1995, the company notified the employees that the mine site would be shut down over a two-week period starting December 5, 1995. *Id.* at 719. A plant closing was announced and not disputed in the case, a plant closing automatically triggers WARN protections. 29 U.S.C. § 2102. The company then announced an immediate layoff of 89 employees the following day on October 3, 1995. *Martinka* 202 F.3d at 719. The Fourth Circuit, analyzing the text of the statute, held that all employees affected by an impending plant shutdown were to be given the 60-day notice period provided by WARN. *Id.* at 721. Here, there is a factual dispute about whether Defendant ever conducted a mass layoff under the text of the statute. If Defendant never conducted a mass layoff, then no WARN protections are triggered. Defendant put forth evidence showing it never exceeded the 33% threshold set by

[25] Pl.'s Resp. 16, ECF No. 40.
[26] *Id.*
[27] *Id.*

Congress in the time frame set by Congress. Plaintiff has been unable to provide numbers to the contrary.

Even considering the affidavits provided by Plaintiff does not create a dispute of material fact. Plaintiff has provided no evidence other than the Cordoba affidavit stating that Defendant fired 120 employees in a 90-day period.[28] Conclusory allegations are not enough to create a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Additionally, shifting the numbers of two employees to different months does not demonstrate Defendant ever exceeded the 33% threshold.[29] Therefore, the WARN requirement was never triggered and Defendant did not violate the WARN act.

### C. Breach of Contract Claim

As Plaintiff acknowledges in her response, the breach of contract is contingent upon finding that Defendant violated WARN.[30] The Court has found Defendant never violated WARN. Therefore, Defendant never violated Plaintiff's contract because Defendant paid Plaintiff all the severance she was due based on her time with the company.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff failed to demonstrate a material issue of disputed fact to show Defendant violated WARN or breached Plaintiff's contract. Accordingly, the Court **GRANTS** summary judgment for the Defendant and **DISMISSES** the case with prejudice.

**SO ORDERED** this **October 16, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[28] *See generally* Pl.'s Resp., ECF No. 40.
[29] Def.'s Reply 12, ECF No. 41.
[30] Pl.'s Resp. 21, ECF No. 40.